ALBERT HENRY, Respondent v. JOHN C. BUDDECKE, Appellant.

**St. Louis Court of Appeals, October 31, 1899.**

1. **Statutory Construction:** WITNESS: EVIDENCE OF LIVING PARTY TO CONTRACT. The spirit of section 8918 Revised Statutes of Missouri is not to close the mouth of the living party to a contract, where the other party is dead, under all conditions and in every circumstance, but to close his mouth, where to permit him to speak would give him an advantage which he would not have were the other party living.

2. ——: EVIDENCE OF ATTORNEY AGAINST CLIENT. Section 8925 Revised Statutes of Missouri means that the intercourse between client and attorney should be protected by profound secrecy, and that under no guise or subtlety should an evasion of the rule be permitted.

3. **Presumption.** The law always presumes good faith in transactions between parties and the *onus* is on the party asserting bad faith, to prove it.

Appeal from the St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

REVERSED AND REMANDED.

Henry v. Buddecke.

*Lubke & Muench* for appellant.

(1) "The court erred in permitting plaintiff to testify, notwithstanding the death of Thoman, who was the maker of the note;" to all that occurred when the note was made by Thoman, and alleged to have been indorsed by Buddecke, as well as all that Thoman claimed to have said at that time. (2) To what took place between plaintiff and Thoman, relative to the delivery of the notes to Thoman, and the belief of plaintiff in connection with that act. R. S. 1889, sec. 8918; Gunn v. Thurston, 130 Mo. 339; Bank v. Root, 132 Mo. 262; Leeper v. Taylor, 111 Mo. 323; Meier v. Thieman, 90 Mo. 443; Lightner v. Gregg, 61 Mo. App. 650; Nugent v. Curran, 77 Mo. 326. (3) When G. A. Buder, called as a witness by plaintiff deliberately stated that defendant had made the same statement to him by way of confidential communication, as witness was about to relate defendant's testimony to have been, the court below should not have waited for the protest of defendant, but should have at once rebuked the witness, and excluded him from giving his testimony. It was error to overrule defendant's objection and to allow this witness to testify concerning the occurrences before the justice, re-enforced by the unwarranted disclosures of confidential communications. Those communications should not be admitted under any guise. R. S. 1889, sec. 8925; State v. Dawson, 90 Mo. 149; Deuser v. Walkup, 43 Mo. App. 627. (4) The instruction given for plaintiff is unwarranted by the evidence, and misleading. It allows plaintiff to recover if any of the notes taken by him in renewal of the $800 were not genuinely indorsed, whereas, under the petition, he must show that all were forgeries. In requiring the jury to find against defendant provided they found that plaintiff "in good faith" surrendered the original note, the jury were left in the dark as to the meaning of this technical expression. Digby v. Ins. Co., 3 Mo. App. 603; Flint v. Ball, 43 Mo. App. 504; Hayes v.

Railroad, 15 Mo. App. 584; Morgan v. Durfee, 69 Mo. 469, 480; Dyer v. Brannock, 2 Mo. App. 432.

*Virgil Rule* for respondent.

(1) The position of Buddecke's name on the back of the note above that of the payee makes him *prima facie,* a maker. Schmidt Malting Co. v. Miller, 38 Mo. App. 251; First N. B. v. Payne, 111 Mo. 291; Semper v. Turner, 65 Mo. 696; Rossi v. Schawaker, 66 Mo. App. 67. (2) The use of the word indorser, by the parties to the contact, in speaking of Buddecke, does not of itself constitute proof that he was an indorser in the technical legal sense. He must show a contract to that effect. Schmidt Malting Co. v. Miller, 38 Mo. App. 251; Boyer v. Boogher, 11 Mo. App. 130. (3) The court did not err in permitting the testimony of Albert Henry under the statute. Henry did not testify to any statement made by Thoman, the deceased, and it is well settled that where a contract is made on one side by two persons, one of whom has since died, the fact does not disqualify the adverse party from testifying in the case. R. S. 1889, sec. 8918; Wallace v. Jecko, 25 Mo. App. 315; Fulkerson v. Thornton, Admr., et al., 68 Mo. 468; Amonett v. Montague, 75 Mo. 43. (4) It is within the discretion of the trial court to receive, by way of rebuttal, evidence which should properly have been introduced in chief. Johnson v. Mason, 27 Mo. 511; State v. Brown, 63 Mo. 439; Hood v. Mathis, 21 Mo. 308; State v. Fitzgerald, 130 Mo. 407.

BLAND, P. J.—In substance the petition alleges that on November 8, 1895, one A. Thoman and defendant executed and delivered to plaintiff their promissory note for $800, with interest at 8 per cent from maturity; that Thoman executed the note by signing it on its face, and defendant by writing his name across the back; that at the maturity of the note it was taken up by a new note executed in the same

manner, and that similar renewals were thereafter made from time to time and payments made, until the last renewal, when the debt was reduced to $450; that on all of said renewal notes the name of defendant was forged, upon the discovery of which plaintiff repudiated them; that the original note and all the renewals, except the last one, were delivered to Thoman; that prior to November 24, 1897, Thoman committed suicide, and that his estate is wholly insolvent. Plaintiff asked judgment on the original note for $450, with 8 per cent interest, from November 24, 1897, the date of the maturity of the last of the several renewal notes.

The answer was a general denial and a denial under oath that defendant executed the original note of $800. The issues were tried by a jury, who found for plaintiff. Judgment was accordingly rendered for plaintiff, and defendant appealed.

Plaintiff, over the objection of the defendant, was permitted to testify in his own behalf. He testified that Thoman signed the original note on its face, and that defendant wrote his name across the back of it in his (plaintiff's) presence, and that in that condition it was delivered to and accepted by him in the presence of defendant. He was also permitted to testify that in good faith he received payments from time to time from Thoman and renewal notes signed by Thoman on the face and with the name of defendant across the back believing the signatures to be genuine, and that he had surrendered the original note to Thoman when he took the first renewal note and all the renewal notes, except the last, dated August 23, 1897, and that when he discovered that the indorsements of defendant's name on the renewal notes were forgeries he repudiated them. Other witnesses testified that on a trial before a justice in a suit against defendant on the last renewal note, the defendant testified as a witness that he did indorse the original note of $800, but not the renewal note then sued on. Gustave A. Buder

(attorney-at-law) was called as a witness on behalf of plaintiff and was asked to state what defendant testified to in the justice's court as to his indorsement on the original note, when the following occurred: "And I want to say to the attorneys that the testimony given by Mr. Buddecke at that time, at the trial of that case, was the same information that he gave me when he consulted me as my client. Now, whether or not that will affect my stating what was said, I don't know. In stating one I naturally disclose what was said to me when he consulted me as an attorney.

Mr. Muench: We object to that testimony.

The Court: He may state what Mr. Buddecke testified before the justice, because that was done openly.

To which ruling of the court in refusing to sustain said objection, defendant at the time duly excepted.

Witness then continued that defendant, Buddecke, at that time stated, as witness recalls it, that he had signed the note which Henry took; that he indorsed the original note of Thoman, and also several of the renewals on reduction of the original."

Defendant testified that he did not indorse the original note or any note payable to the plaintiff. Testimony was offered also on the part of the defendant to the effect that neither the original, nor any of the renewal notes were found among the papers of Thoman after his death.

(1) Appellant contends that plaintiff was not a competent witness for any purpose, Thoman the other party to the contract being dead. We think he was a competent witness to the physical facts that defendant indorsed the note in his (plaintiff's) presence, and that after its indorsement it was in the presence and with the knowledge of defendant delivered to him. His testimony to these physical facts gave him no advantage over the defendant, but placed him in a position of equality with his adversary. The spirit of the statute (section 8918) is not to close the mouth of the living party to

a contract, where the other party is dead, under all conditions and in every circumstance, but to close his mouth, where to permit him to speak would give him an advantage which he would not have were the other party living.   Bank v. Payne, 111 Mo. loc. cit. 298, 299; Brim v. Fleming, 135 Mo. loc. cit. 606, 607; Orr v. Rode, 101 Mo. loc. cit. 398; Coughlin v. Haussler, 50 Mo. 126.   But we are of the opinion that he was not a competent witness as to the renewal notes taken by him from Thoman, and of their surrender and the surrender of the original to Thoman.   These several transactions were had with Thoman when defendant was not present.   Thoman was the other party and the only other party to these transactions; he being dead, plaintiff is incompetent to testify concerning them.   Banking House v. Rood, 132 Mo. loc. cit. 262; Gunn v. Thurston, 130 Mo. 339; Lightner's Admr. v. Gregg, 61 Mo. App. 650.

(2)   The witness G. A. Buder disqualified himself to testify on the trial, when he disclosed the fact to the court and jury that his testimony of what defendant testified before the justice, was first imparted to him by the defendant as his attorney.   He placed himself in a position where he could not testify to what was said by defendant as a witness in the justice's court, without at the same time and in the same breath disclosing to the jury what was communicated to him by the defendant as his attorney.   The intercourse between client and attorney should be protected by profound secrecy, says Mr. Greenleaf.   1 Greenl. on Evid., sec. 240.   Our state has reinforced the rule by statutory enactment (R. S. 1899, section 8925), and under no guise or subtlety should an evasion of the rule be permitted.   State v. Dawson, 90 Mo. 149; Deuser v. Walkup, 43 Mo. App. loc. cit. 627. The court should have directed the plaintiff to withdraw this witness and proceed without his testimony, or continue his cause to a subsequent term, or by consent to a subsequent day of the same term.   From the testimony of this witness plaintiff

got the benefit of both what defendant testified to before the justice, and what he in secret and in confidence communicated to his attorney. This was not only unlawful, but gave the plaintiff an undue advantage, which can not be sanctioned by either reason or justice.

(3) Appellant also contends that the court erred in giving the following instruction:

"The jurors are instructed that if they believe and find from the evidence that on the 8th day of November, 1895, A. Thoman signed and executed a note whereby he promised for value received to pay to the order of plaintiff the sum of eight hundred ($800) dollars, with interest thereon, after the maturity of said note, at the rate of eight per cent per annum, and that at the time of the execution of said note and before its delivery, it was signed by defendant on the back thereof.

"And if the jurors further believe and find from the evidence that at maturity of said note, plaintiff, in good faith, surrendered said note and took another note purporting to have been indorsed by defendant, which said note was not as a matter of fact indorsed by defendant, and that thereafter plaintiff took other notes under the same circumstances, and under the belief that the signatures thereon were the genuine signatures of defendant, when in fact they were not, and surrendered said notes under that belief   *   *   *."

Appellant's contention is that the court did not explain to the jury the meaning of the phrase "in good faith," which occurs in the second clause of the instruction. This phrase has no such technical or occult meaning as to make it incomprehensible to the mind of the ordinary juryman. Its meaning is perhaps as well understood by the lay members of society as any other ordinary phrase in the English language, besides the phrase was unnecessarily used in the instruction. The testimony is all to the effect that the renewal notes were all taken in the usual course of business. There was nothing

unusual or extraordinary in the conduct of the plaintiff in accepting payments and renewal notes, and the presumption is that these transactions were like all ordinary transactions of a similar nature, done and had for the accommodation of the payers of the original note, and for the same purpose and upon like consideration as characterized commercial transactions of a like kind. If there was bad faith, the onus was on the defendant to prove it, and not on plaintiff to prove good faith, since the law presumed it in the circumstances detailed in evidence. For the errors above noted the judgment is reversed and the cause remanded. All concur.